**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
SONITA JACOBS,

                          Plaintiff,                   **COMPLAINT**

               -against-

                                             **JURY TRIAL DEMANDED**

ELEVANCE HEALTH, INC.; STEPHANIE COLAZZO;
AND SHANNON COSMINSKI,

                          Defendants.
------------------------------------------------------------------X

       Plaintiff Sonita Jacobs, by her attorneys, Filippatos PLLC, hereby alleges against Defendant Elevance Health, Inc. ("Elevance" or the "Company"), Stephanie Collazzo, and Shannon Cosminski (together, the "Individual Defendants") as follows:

### NATURE OF THE CASE

       1.     Sonita Jacobs, a former Senior Nurse Case Manager at Elevance Health Inc., is a highly qualified African American woman who faced discrimination and retaliation at her workplace following over two and a half years of excellent performance. Ms. Jacobs held over 18 years of nursing experience and a Master's degree yet was subjected to racial stereotyping and hostile treatment based on her race (Black).

       2.     After being transferred to a new team in April 2023, Ms. Jacobs received discriminatory audits containing racial microaggressions, with criticism focused on stereotypical characterizations of her tone being called "aggressive" - playing into the "angry Black woman" stereotype. Her former manager had even warned her about the new manager's pattern of using such audits to target Black nurses.

       3.     The discrimination intensified after Ms. Jacobs announced that she was going to report the racial discrimination to Human Resources ("HR"). Immediately thereafter, Ms. Jacobs

received another critical audit and was falsely accused of documentation errors regarding a patient's blood pressure readings. Shockingly, the Company canceled her scheduled HR meeting regarding her discrimination complaints and locked her out of the computer system in a further retaliatory move.

4. The Company's discriminatory conduct culminated in June 2023 when, just days after the canceled HR meeting, Ms. Jacobs was abruptly terminated without explanation beyond a vague statement that HR and Legal had directed it. This termination occurred despite her having received no formal warnings, and without any investigation into her discrimination complaints, demonstrating a clear pattern of retaliation against employees who speak up about racial discrimination they face at the Company.

5. As a result of Defendants' unlawful conduct, Plaintiff hereby brings this action to obtain redress from Defendants for violating her rights under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981); the New York State Human Rights Law, New York State Executive Law, §§ 296 et seq. ("NYSHRL"); and the New York City Human Rights Law, Administrative Code §§ 8-107, et seq. ("NYCHRL").

**PARTIES, JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

6. At all times relevant hereto, Plaintiff was a resident of the State of New York while working at Elevance.

7. At all times relevant hereto, Plaintiff was and is an African American female.

8. At all times relevant hereto, Plaintiff was an employee of Elevance working remotely.

8. At all times material, Elevance was and is a domestic for-profit company, maintaining its principal place of business at located at 139 Centre St, New York, NY 10013.

9. Upon information and belief, Elevance employs approximately 11,000 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

10. Upon information and belief, at all times relevant hereto, Defendant Stephanie Collazzo was an individual residing in the State of Florida, as well was an employee of Elevance, holding the position of "Manager" and had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision making regarding same.

11. Upon information and belief, at all times relevant hereto, Defendant Shannon Cosminski was an individual residing in the State of Florida, as well as an employee of Elevance, holding the position of "Nurse Auditor" and had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision making regarding same.

12. This Court has subject matter jurisdiction over this matter pursuant to 28 USC §1331.

13. This Court has supplemental jurisdiction over the claims that Plaintiff has brought under state law pursuant to 28 USC § 1367.

13. Venue is proper in this district, pursuant to 28 USC §1391(b)(2), as a substantial part of the acts complained of occurred therein.

15. By: (a) filing a Charge of Discrimination with Equal Employment Opportunity Commission ("EEOC"); (b) receiving a Notice of Right to Sue from EEOC on September 17, 2024; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue per

the existence of a tolling agreement between the relevant parties, Plaintiff has satisfied all procedural prerequisites for the commencement of the instant action.

## FACTUAL ALLEGATIONS

A. **Plaintiff's Illustrious Career in Nursing**

16. Plaintiff joined Elevance in December 2019 with over 18 years of experience in nursing, with a particular emphasis on nursing case management. After graduating in 2004 with a Bachelor of Science degree from Mercy College in Dobbs Ferry, New York, Plaintiff earned her Master of Science degree, also from Mercy College, in 2007. Following an externship at Gwinnett Medical Center, Plaintiff began her career at the Department of Veterans Medical Center, with subsequent roles of increasing responsibility in nursing and case management, most recently at GENEX Services, LLC, where she worked with multiple insurance carriers to reduce work-related injuries and contain worker compensation costs while collaborating with providers to ensure employees' safe return to work.

B. **Plaintiff is Hired by Elevance**

17. When she joined Elevance as Senior Nurse Case Manager, RN, on or about December 1, 2019, Plaintiff assumed exclusive responsibility for strategic implementation of the following key functions: taking calls from members (i.e., policy holders) inquiring about diagnoses, treatment, and other medical matters; collaborating with healthcare providers and members to promote quality member outcomes; promoting effective use of resources for more complex medical issues; and ensuring medically appropriate, high-quality, cost-effective care through assessing the medical necessity of inpatient admissions and outpatient services, among numerous other duties.

18. Thus, given her vast experience in nursing and case management as well as her

cross-functional leadership abilities, Plaintiff achieved early success at Elevance and was thrilled to have reached what she thought was the pinnacle of her career in nursing by landing a position at a venerable institution such as Elevance, which offered her security, as well as the opportunity to design and build trailblazing initiatives.

**C. Plaintiff Receives a Call Audit Containing Racially Discriminatory Remarks**

19. Plaintiff's assimilation into the Company during her first two and a half years went smoothly. However, she soon learned that Elevance fostered an environment in which the discriminatory "angry Black woman" stereotype was permitted to be used.

20. In April 2023, Plaintiff was moved to the team of Stephanie Colazzo, Manager (Caucasian/Latina) ("Defendant Collazo"), when Plaintiff's former manager Vivian Stewart (Black) ("Ms. Stewart"), was terminated.

21. Notably, Ms. Stewart warned Plaintiff that Defendant Collazo routinely uses Nurse Auditor Shannon Cosminski (Caucasian) ("Defendant Cosminski") to help her "get rid of Black nurses."

22. Plaintiff's calls with plan members were routinely audited for quality control by internal auditors. On May 1, 2023, Plaintiff received an audit from Ms. Cosminksi, with whom Plaintiff had not previously worked. Defendant Cosminski's audit was replete with racial micro-aggressions based on the "angry Black woman" stereotype. Specifically, Defendant Cosminski criticized Plaintiff' "tone" as not being sufficiently sympathetic, and further stated that that the manner in which Plaintiff spoke could "come off as aggressive."

23. Plaintiff responded by asking to meet with Defendant Cosminski, but Defendant Cosminski declined, referring Plaintiff to Defendant Collazo. Accordingly, Plaintiff emailed Defendant Collazo for assistance.

24. The following day, May 2, 2023, Defendant Collazo told Plaintiff she had listened to the call and reviewed both the audit and Plaintiff's corresponding notes in the Company's digital system. Defendant Collazo then met with Plaintiff. Plaintiff detailed her complaint about Defendant Cosminski's micro-aggressions, which alluded to hateful stereotypes about Black women and their tone of voice.

25. Defendant Collazo agreed that Defendant Cosminski had not "used her Cultural Competencies" skills in the audit. Defendant Collazo further noted that she had listened to the call three times and did not agree with Defendant Cosminski's comments. Defendant Collazo admitted that the comments could certainly be perceived as racial micro-aggressions and promised she would speak to Defendant Cosminski's manager about the incident.

26. Following up on that promise, Plaintiff reached out to Defendant Collazo for an update on May 12, 2023, but Defendant Collazo said she had not yet spoken with Defendant Cosminski's manager about the racial micro-aggressions.

27. Shortly thereafter, on May 22, 2023, Plaintiff suddenly received an email changing her schedule with no prior notice or discussion. The new hours were not workable for Plaintiff as they would interfere with her obligation to take her child, who has special needs, to therapy each day, a fact that the Company was aware of.

28. Also, on May 22, 2023, Plaintiff again inquired about Defendant Collazo's meeting with Defendant Cosminski's manager regarding the micro-aggressions. Defendant Collazo responded stating Defendant Cosminski's manager was out on PTO, and they would meet upon her return to work.

29. Feeling as though her complaint was not being taken seriously, Plaintiff informed Defendant Collazo that she intended to report the incident to HR.

**D. After Informing Management That She Was Escalating Her Discrimination Complaint to HR, Plaintiff Immediately Received a Negative Audit and Was Falsely Accused of <u>Providing Incongruent Documentation</u>**

30. Just three days after Plaintiff announced her intention to complain to HR, she received a critical audit from Defendant Cosminski, stating that her verbiage, grammar, spelling, and other communication methods were all very poor.

31. The audit also stated that Plaintiff had interrupted the caller and had not shown enough empathy. Plaintiff again felt berated, belittled, and racially targeted.

32. Plaintiff was then invited to a Teams meeting with Defendant Collazo, at which Defendant Collazo stated that the same audit had been "red-flagged" for "incongruent documentation."

33. On the call that was the subject of the audit, Plaintiff had asked the member about her blood pressure, and the member replied that it was normal. Defendant Collazo claimed that, despite the caller not providing a precise blood pressure reading, Plaintiff had entered the numerical rating "185/105" into the system. That, however, was not the case. Plaintiff had in fact only checked the box for "normal" blood pressure; she had not entered a numerical reading.

34. When no numerical reading is entered for blood pressure, the system automatically populates with the last recorded reading for the member, which in this case had been 185/105. Although Plaintiff explained all this to Defendant Collazo, her explanation fell on deaf ears.

35. Defendant Collazo also criticized Plaintiff for not asking certain questions on the call, but Plaintiff had already obtained the necessary information on those points and did not need to ask the questions outright. In fact, asking these redundant questions may have led the member to believe she was not being heard by Plaintiff.

36. On a call later that day with Plaintiff, Defendant Collazo, and BSN Supervisor

7

Ashley Layton ("Ms. Layton"), Defendant Collazo stated that she was reporting the supposed "incongruent documentation" to the Compliance department.

37. Defendant Collazo told Plaintiff to expect to hear from Compliance soon and to be prepared for a possible verbal warning, written warning, or even termination. Yet, in contrast to Defendant Collazo's dire warnings and threats, Ms. Layton remained unperturbed, saying she was "sure this is nothing."

38. On May 30, 2023, Plaintiff was informed that she would be meeting with Compliance and HR on June 6, 2023, regarding the documentation issue, and with HR on June 8, 2023, regarding her complaint about Defendant Cosminski's racist remarks.

E. **Although a Compliance Representative Told Plaintiff She Had Found No Compliance Violations, Plaintiff Was Nevertheless Terminated**

39. On June 6, 2023, at the scheduled meeting with Compliance, Jamillo Viridiana, Ethics Department Investigator ("Ms. Viridiana"), and HR Associate Ashlynn Dunn ("Ms. Dunn"), Ms. Viridiana said she had reviewed the call and corresponding documentation and had not found any compliance violations. She asked Plaintiff to explain what happened from her perspective. Plaintiff offered the same explanation that she had given Defendant Collazo. Ms. Viridiana then asked Plaintiff about her supposed failure to ask the caller certain questions, prompting Plaintiff to explain again that she had been able to infer the answers to those questions from the information the caller had already provided in response to other questions.

40. Ms. Viridiana determined that the matter was "more of a practice issue than a compliance issue" and reiterated that she could find no compliance violations. Ms. Dunn observed that Plaintiff' manager, Defendant Collazo, was "strict" about documentation and about asking each and every question. Ms. Dunn also questioned why Plaintiff had entered some of her notes after the call had ended, prompting Plaintiff to explain that completing documentation after a call

was standard procedure, referred to within the Company as "after-call work."

41. While Elevance had no trouble honoring its commitment to hold the Compliance meeting on June 6, the Company inexplicably cancelled the scheduled HR meeting regarding Plaintiff's discrimination complaint on June 8, supposedly because – conveniently for the Company – Plaintiff was locked out of her computer system the morning of the meeting. Indeed, the HR representative who cancelled the meeting openly demonstrated her lack of preparation to meet as scheduled on June 8, when she stated that she still needed to learn the content of the micro-aggressive comments and asked Plaintiff to send them to her. In other words, the HR representative had done zero preparation to meet with Plaintiff on June 8 regarding her discrimination complaint. Clearly, no investigation whatsoever was underway.

42. It is unclear whether HR ever intended to meet with Plaintiff about her discrimination complaint at all. In reality, the meeting never took place. Tellingly, however, less than a week later, on June 12, in a Microsoft Teams meeting attended by Plaintiff, Defendant Collazo, and Heidi Campos, Manager II ("Ms. Campos"), Defendant Collazo abruptly and unceremoniously terminated Plaintiff's employment, stating, without further explanation, that she had been directed to do so by HR and the Legal department.

43. Despite her determination to remain optimistic about, and committed to, her career at Elevance, the ruthless discrimination and retaliation she has continued to suffer at the Company has rendered Plaintiff distraught and crestfallen. Indeed, Plaintiff's emotional distress is clear and cognizable given the reality that Elevance allowed Defendant Collazo to press her unlawful campaign against Plaintiff without repercussion, while ignoring its obligations to seriously investigate Plaintiff's complaints of discrimination and retaliation.

### FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
*Against Defendant Elevance Health*

44. Plaintiff repeats and realleges each and every allegation in the above paragraphs of this complaint as if fully set forth herein.

45. By the actions detailed above, among others, Elevance discriminated against Plaintiff in violation of Title VII by, *inter alia*, denying her the equal terms and conditions of employment because of race and color (Black), allowing Plaintiff to be subjected to discrimination.

46. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

47. Accordingly, as a result of the unlawful conduct of Elevance set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

### SECOND CAUSE OF ACTION
### RETALIATION UNDER TITLE VII
*Against Defendant Elevance Health*

48. Plaintiff repeats and realleges each and every allegation in the above paragraphs of this complaint as if fully set forth herein.

49. By the actions detailed above, among others, Elevance has retaliated against Plaintiff based on her protected activities in violation of Title VII, including giving her a negative audit and terminating Plaintiff's employment.

50. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past

and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

51. Accordingly, as a result of the unlawful conduct of Elevance set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER SECTION 1981
*Against all Defendants*

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs in this complaint as if fully set forth herein.

53. Pursuant to 42 USC §1981: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and should all be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

54. Defendants engaged in unlawful employment practices prohibited by 42 USC §1981 against Plaintiff by denying her the equal terms and conditions of employment, discriminating against her because of her race and color (Black).

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety,

pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

56. Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

## FOURTH CAUSE OF ACTION
## RETALIATION UNDER SECTION 1981
*Against all Defendants*

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs in this complaint as if fully set forth herein.

58. As described above, Defendants retaliated and/or discriminated against Plaintiff for engaging in protected activities pursuant to 42 USC § 1981, including by giving her a negative audit and terminating Plaintiff's employment.

59. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

60. Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER NYSHRL
*Against all Defendants*

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs in this complaint as if fully set forth herein.

62. New York Executive Law § 296 provides that:

> 1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

63. By the actions detailed above, among others, Defendants have discriminated against Plaintiff in violation of the NYSHRL by, *inter alia*, denying her the equal terms and conditions of employment, discriminating against her because of her race and color (black).

64. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

65. Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

## SIXTH CAUSE OF ACTION
### RETALATION UNDER NYSHRL
*Against all Defendants*

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

67. New York Executive Law § 296 provides that:

> 7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

68. By the actions detailed above, among others, Defendants have retaliated against Plaintiff based on her protected activities in violation of the NYSHRL, including by giving her a negative audit and terminating Plaintiff's employment.

69. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

70. Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

## SEVENTH CAUSE OF ACTION
### AIDING AND ABETTING UNDER NYSHRL
*Against Individual Defendants Only*

71. Plaintiff hereby repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

72. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

14

73. Individual Defendants engaged in an unlawful employment practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct against Plaintiff.

74. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

75. Accordingly, as a result of the unlawful conduct of Individual Defendants, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

## EIGHTH CAUSE OF ACTION
## DISCRIMINATION UNDER NYCHRL
*Against all Defendants*

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

77. New York City Administrative Code §8-107(1) provides that it shall be unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment."

78. By the actions detailed above, among others, Defendants have discriminated against Plaintiff in violation of the NYCHRL by, *inter alia*, denying her the equal terms and conditions of employment, discriminating against her because of her race and color (black).

98. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that his employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

99. Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

### NINTH CAUSE OF ACTION
### RETALIATION UNDER NYCHRL
*Against all Defendants*

79. Plaintiff hereby repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

80. New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, (v)

requested a reasonable accommodation under this chapter, or ([v]vi) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.

81. By the actions detailed above, among others, Defendants have retaliated against Plaintiff based on her protected activities in violation of the NYCHRL, including by giving her a negative audit and terminating Plaintiff's employment.

91. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

92. Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

## TENTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER NYCHRL
### *Against Individual Defendants*

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

92. New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any acts of the acts forbidden under this chapter, or attempt to do so."

93. Individual Defendants engaged in an unlawful employment practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling, or coercing the discriminatory conduct against Plaintiff.

94. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

95. Accordingly, as a result of the unlawful conduct of Individual Defendants, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981); the New York State Human Rights Law, New York State Executive Law, §§ 296 et seq. ("NYSHRL"); the New York City Human Rights Law, Administrative Code §§ 8-107, et seq. ("NYCHRL") in that Defendants discriminated and retaliated against Plaintiff on the on the basis of her race and color (black);

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants unlawful discrimination and to otherwise make her whole for any losses suffered as a

result of such unlawful employment practices;

  C. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to her reputation in an amount to be proven at trial;

  D. Awarding Plaintiff punitive damages;

  E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action; and

  F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 31, 2025
   New York, New York       Respectfully submitted,

                 **FILIPPATOS PLLC**

By: _____

Alfredo J. Pelicci
425 Madison Ave, Suite 1502
New York, New York 10017
T./F: 212-202-0234, Ext. 414
apelicci@filippatoslaw.com
*Counsel for Plaintiff*