UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

SONITA JACOBS,

                Plaintiff,

      -against-

ELEVANCE HEALTH, INC.; STEPHANIE
COLAZZO; AND SHANNON
COSMINSKI,

                Defendants.

-------------------------------------------------------- X

Civil Action No. 1:25-cv-00947-RA

**DEFENDANTS' ANSWER AND
AFFIRMATIVE AND OTHER
DEFENSES TO PLAINTIFF'S
COMPLAINT**

Defendants ELEVANCE HEALTH, INC. (hereinafter, the "Company"), STEPHANIE

COLLAZO (incorrectly spelled in several sections of the Complaint as "Colazzo," and hereinafter

"Collazo"), and SHANNON COSMINSKI (hereinafter, "Cosminski") (collectively, the

"Defendants"), by and through their attorneys Seyfarth Shaw LLP, hereby submit their Answer

and Affirmative and Other Defenses to Sonita Jacob's (hereinafter, "Plaintiff") Complaint, as

follows:

## NATURE OF THE CASE

**COMPLAINT ¶1:**

Sonita Jacobs, a former Senior Nurse Case Manager at Elevance Health Inc., is a highly
qualified African American woman who faced discrimination and retaliation at her workplace
following over two and a half years of excellent performance. Ms. Jacobs held over 18 years of
nursing experience and a Master's degree yet was subjected to racial stereotyping and hostile
treatment based on her race (Black).

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1 of the Complaint concerning Plaintiff's purported concerns

or emotional state, and therefore deny the same. Defendants specifically deny that Plaintiff was

1

subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint.

Defendants deny the remaining allegations contained in Paragraph 1 of the Complaint, except

admit that Plaintiff is a former Nurse Care Manger Senior at the Company.

**COMPLAINT ¶2:**

After being transferred to a new team in April 2023, Ms. Jacobs received discriminatory audits containing racial microaggressions, with criticism focused on stereotypical characterizations of her tone being called "aggressive" - playing into the "angry Black woman" stereotype. Her former manager had even warned her about the new manager's pattern of using such audits to target Black nurses.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 2 of the Complaint concerning Plaintiff's purported concerns

or emotional state, and therefore deny the same.  Defendants specifically deny that Plaintiff was

subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint.

Defendants deny the remaining allegations contained in Paragraph 2 of the Complaint, except

admit that starting in or around March 2023 Collazo was Plaintiff's manager.

**COMPLAINT ¶3:**

The discrimination intensified after Ms. Jacobs announced that she was going to report the racial discrimination to Human Resources ("HR"). Immediately thereafter, Ms. Jacobs received another critical audit and was falsely accused of documentation errors regarding a patient's blood pressure readings. Shockingly, the Company canceled her scheduled HR meeting regarding her discrimination complaints and locked her out of the computer system in a further retaliatory move.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 3 of the Complaint concerning Plaintiff's purported concerns

or emotional state, and therefore deny the same.  Defendants specifically deny that Plaintiff was

subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint.

Defendants deny the remaining allegations contained in Paragraph 3 of the Complaint, except

317706179v.5

admit that following an internal investigation, Plaintiff was found to have improperly assessed a member's change in condition and falsified member documentation.

**COMPLAINT ¶4:**

The Company's discriminatory conduct culminated in June 2023 when, just days after the canceled HR meeting, Ms. Jacobs was abruptly terminated without explanation beyond a vague statement that HR and Legal had directed it. This termination occurred despite her having received no formal warnings, and without any investigation into her discrimination complaints, demonstrating a clear pattern of retaliation against employees who speak up about racial discrimination they face at the Company.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint concerning Plaintiff's purported concerns or emotional state, and therefore deny the same. Defendants specifically deny that Plaintiff was subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint. Defendants deny the remaining allegations contained in Paragraph 4 of the Complaint, except admit that Plaintiff was terminated on or about June 13, 2023.

**COMPLAINT ¶5:**

As a result of Defendants' unlawful conduct, Plaintiff hereby brings this action to obtain redress from Defendants for violating her rights under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981); the New York State Human Rights Law, New York State Executive Law, §§ 296 et seq. ("NYSHRL"); and the New York City Human Rights Law, Administrative Code §§ 8-107, et seq. ("NYCHRL").

**ANSWER:**

Paragraph 5 of the Complaint contains a summary of Plaintiff's purported clams to which no response is required. To the extent a response is required, Defendants deny that they violated Plaintiff's rights under Title VII, the NYSHRL, and the NYCHRL.

317706179v.5

**PARTIES, JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

**COMPLAINT ¶6:**

At all times relevant hereto, Plaintiff was a resident of the State of New York while working at Elevance.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint concerning Plaintiff's purported residency, and therefore deny the same, except admit that Plaintiff is a former employee of the Company.

**COMPLAINT ¶7:**

At all times relevant hereto, Plaintiff was and is an African American female.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint concerning Plaintiff's purported race, and therefore deny the same.

**COMPLAINT ¶8:**

At all times relevant hereto, Plaintiff was an employee of Elevance working remotely.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 8 of the Complaint.

**COMPLAINT ¶8:** [sic]

At all times material, Elevance was and is a domestic for-profit company, maintaining its principal place of business at located at 139 Centre St, New York, NY 10013.

**ANSWER:**

Paragraph 8 [sic] of the Complaint asserts legal conclusions which no response is required. To the extent a response is required, Defendants admit the allegations in Paragraph 8 [sic] of the

4

317706179v.5

Complaint, except aver that the Company's principal place of business is located at 220 Virginia Avenue, Indianapolis, Indiana 46204.

**COMPLAINT ¶9:**

Upon information and belief, Elevance employs approximately 11,000 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 9 of the Complaint.

**COMPLAINT ¶10:**

Upon information and belief, at all times relevant hereto, Defendant Stephanie Collazzo [sic] was an individual residing in the State of Florida, as well was an employee of Elevance, holding the position of "Manager" and had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision making regarding same.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 10 of the Complaint, except aver that Collazo held the job title of Manager II Case Management, was an individual residing in Virginia, and was an employee of Elevance.

**COMPLAINT ¶11:**

Upon information and belief, at all times relevant hereto, Defendant Shannon Cosminski was an individual residing in the State of Florida, as well as an employee of Elevance, holding the position of "Nurse Auditor" and had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision making regarding same.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 11 of the Complaint, except aver that Cosminski was hired as a Nurse Care Manager II in or about 2019, transferred to a Quality Evaluator in or about March 2021, and then was promoted to Senior Quality Evaluator in or about

5

March 2023.  Defendants admit that that Cosminski was an individual residing in Florida and was an employee of the Company.

**COMPLAINT ¶12:**

This Court has subject matter jurisdiction over this matter pursuant to 28 USC §1331.

**ANSWER:**

Paragraph 12 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff purports to invoke this Court's jurisdiction over Plaintiff's claims.

**COMPLAINT ¶13:**

This Court has supplemental jurisdiction over the claims that Plaintiff has brought under state law pursuant to 28 USC § 1367.

**ANSWER:**

Paragraph 13 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff purports to invoke this Court's supplemental jurisdiction over Plaintiff's state law claims.

**COMPLAINT ¶14:**

Venue is proper in this district, pursuant to 28 USC §1391(b)(2), as a substantial part of the acts complained of occurred therein.

**ANSWER:**

Paragraph 14 of the Complaint concerns legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff asserts venue in this District is proper.

**COMPLAINT ¶15:**

By: (a) filing a Charge of Discrimination with Equal Employment Opportunity Commission ("EEOC"); (b) receiving a Notice of Right to Sue from EEOC on September 17, 2024; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue

6

per the existence of a tolling agreement between the relevant parties, Plaintiff has satisfied all procedural prerequisites for the commencement of the instant action.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint, and therefore deny the same, except admit that Plaintiff filed a Charge of Discrimination with the EEOC, and that the Dismissal and Notice of Rights, was issued on or about September 27, 2024.  Defendants further admit that the Parties entered into an agreement to toll the statute of limitations on or about December 24, 2024.

**FACTUAL ALLEGATIONS**

**A.     Plaintiff's Illustrious Career in Nursing**

**COMPLAINT ¶16:**

Plaintiff joined Elevance in December 2019 with over 18 years of experience in nursing, with a particular emphasis on nursing case management. After graduating in 2004 with a Bachelor of Science degree from Mercy College in Dobbs Ferry, New York, Plaintiff earned her Master of Science degree, also from Mercy College, in 2007. Following an externship at Gwinnett Medical Center, Plaintiff began her career at the Department of Veterans Medical Center, with subsequent roles of increasing responsibility in nursing and case management, most recently at GENEX Services, LLC, where she worked with multiple insurance carriers to reduce work-related injuries and contain worker compensation costs while collaborating with providers to ensure employees' safe return to work.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint, and therefore deny the same, except admit that Plaintiff was hired by the Company on or about December 16, 2019.

**B.     Plaintiff is Hired by Elevance**

**COMPLAINT ¶17:**

When she joined Elevance as Senior Nurse Case Manager, RN, on or about December 1, 2019, Plaintiff assumed exclusive responsibility for strategic implementation of the following key functions: taking calls from members (i.e., policy holders) inquiring about diagnoses, treatment, and other medical matters; collaborating with healthcare providers and members to promote quality member outcomes; promoting effective use of resources for more complex medical issues;

7

and ensuring medically appropriate, high-quality, cost-effective care through assessing the medical necessity of inpatient admissions and outpatient services, among numerous other duties.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 17 of the Complaint, except admit that Plaintiff was hired by the Company as a Nurse Care Manager Senior on or about December 16, 2019.

**COMPLAINT ¶18:**

Thus, given her vast experience in nursing and case management as well as her cross-functional leadership abilities, Plaintiff achieved early success at Elevance and was thrilled to have reached what she thought was the pinnacle of her career in nursing by landing a position at a venerable institution such as Elevance, which offered her security, as well as the opportunity to design and build trailblazing initiatives.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 18 of the Complaint, except admit that Plaintiff received an overall rating of "Meets Expectations" on her 2020, 2021, and 2022 Performance Reviews.

**C.    Plaintiff Receives a Call Audit Containing Racially Discriminatory Remarks**

**COMPLAINT ¶19:**

Plaintiff's assimilation into the Company during her first two and a half years went smoothly. However, she soon learned that Elevance fostered an environment in which the discriminatory "angry Black woman" stereotype was permitted to be used.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 19 of the Compliant, except admit that Plaintiff received an overall rating of "Meets Expectations" on her 2020, 2021, and 2022 Performance Reviews.  Defendants specifically deny that Plaintiff was subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint.

8

317706179v.5

**COMPLAINT ¶20:**

In April 2023, Plaintiff was moved to the team of Stephanie Colazzo [sic], Manager (Caucasian/Latina) ("Defendant Collazo"), when Plaintiff's former manager Vivian Stewart (Black) ("Ms. Stewart"), was terminated.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 20 of the Complaint, except admit that from on or about January 17, 2022 through November 20, 2022 Plaintiff's manager was Vivian Stewart, from on our about November 21, 2022 through March 12, 2023 Plaintiff's manager was Amy Sunday, and from on or about March 13, 2023 through her termination, Collazo was Plaintiff's manager.

**COMPLAINT ¶21:**

Notably, Ms. Stewart warned Plaintiff that Defendant Collazo routinely uses Nurse Auditor Shannon Cosminski (Caucasian) ("Defendant Cosminski") to help her "get rid of Black nurses."

**ANSWER:**

Defendants deny the allegations contained in Paragraph 21 of the Compliant.  Defendants specifically deny that Plaintiff was subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint.

**COMPLAINT ¶22:**

Plaintiff's calls with plan members were routinely audited for quality control by internal auditors. On May 1, 2023, Plaintiff received an audit from Ms. Cosminksi, with whom Plaintiff had not previously worked. Defendant Cosminski's audit was replete with racial micro-aggressions based on the "angry Black woman" stereotype. Specifically, Defendant Cosminski criticized Plaintiff' "tone" as not being sufficiently sympathetic, and further stated that that the manner in which Plaintiff spoke could "come off as aggressive."

**ANSWER:**

Defendants deny the allegations contained in Paragraph 22 of the Compliant, except admit that employees in Plaintiff's position, who conduct calls with members, are subject to routine audits in order to measure their performance.  Further, auditors are randomly assigned to

9

317706179v.5

associates.  Defendants admit that Plaintiff received a routine audit from Cosminski on or about

May 1, 2023 regarding an April 26, 2023 inbound call with a member.  Defendants also admit that

Plaintiff received Customer Experience comments that she needed to work on actively listening

and asking probing questions to members, in order to better understand their concerns, and also to

be mindful of her tone and inflection with members in order to create a better member experience.

Customer Experience comments do not affect an associate's audit rating, and are feedback and

suggestions of improvement for the associate.  Defendants specifically deny that Plaintiff was

subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint.

**COMPLAINT ¶23:**

Plaintiff responded by asking to meet with Defendant Cosminski, but Defendant Cosminski declined, referring Plaintiff to Defendant Collazo. Accordingly, Plaintiff emailed Defendant Collazo for assistance.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 23 of the Complaint, except aver

that Plaintiff asked to speak with either her manager or Cosminski and Cosminski, per Company

advice and direction of her manager, referred Plaintiff to her manager, Collazo.

**COMPLAINT ¶24:**

The following day, May 2, 2023, Defendant Collazo told Plaintiff she had listened to the call and reviewed both the audit and Plaintiff's corresponding notes in the Company's digital system. Defendant Collazo then met with Plaintiff. Plaintiff detailed her complaint about Defendant Cosminski's micro-aggressions, which alluded to hateful stereotypes about Black women and their tone of voice.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 24 of the Compliant, except admit

that Collazo reviewed the audit and Plaintiff's feedback, and met with Plaintiff.  Defendants further

aver that Plaintiff's audit was not negatively impacted by the Customer Experience comments, as

they do not affect an associate's audit rating, and are feedback and suggestions of improvement

10

317706179v.5

for the associate.   Defendants specifically deny that Plaintiff was subject to any discrimination,

retaliation, or unlawful conduct alleged in the Complaint.

**COMPLAINT ¶25:**

Defendant Collazo agreed that Defendant Cosminski had not "used her Cultural Competencies" skills in the audit. Defendant Collazo further noted that she had listened to the call three times and did not agree with Defendant Cosminski's comments. Defendant Collazo admitted that the comments could certainly be perceived as racial micro-aggressions and promised she would speak to Defendant Cosminski's manager about the incident.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 25 of the Complaint.  Defendants

specifically deny that Plaintiff was subject to any discrimination, retaliation, or unlawful conduct

alleged in the Complaint.

**COMPLAINT ¶26:**

Following up on that promise, Plaintiff reached out to Defendant Collazo for an update on May 12, 2023, but Defendant Collazo said she had not yet spoken with Defendant Cosminski's manager about the racial micro-aggressions.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 26 of the Complaint, except admit

that Collazo reached out Cosminski's manager, and spoke to Plaintiff's manager about Collazo's

conversation with Plaintiff.

**COMPLAINT ¶27:**

Shortly thereafter, on May 22, 2023, Plaintiff suddenly received an email changing her schedule with no prior notice or discussion. The new hours were not workable for Plaintiff as they would interfere with her obligation to take her child, who has special needs, to therapy each day, a fact that the Company was aware of.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 27 of the Complaint concerning Plaintiff's purported concerns,

and therefore deny the same.

11

317706179v.5

**COMPLAINT ¶28:**

Also, on May 22, 2023, Plaintiff again inquired about Defendant Collazo's meeting with Defendant Cosminski's manager regarding the micro-aggressions. Defendant Collazo responded stating Defendant Cosminski's manager was out on PTO, and they would meet upon her return to work.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 28 of the Complaint, except admit

that Collazo reached out Cosminski's manager, she was initially on PTO, and then Collazo spoke

to Plaintiff's manager about Collazo's conversation with Plaintiff.  Defendants specifically deny

that Plaintiff was subject to any discrimination, retaliation, or unlawful conduct alleged in the

Complaint.

**COMPLAINT ¶29:**

Feeling as though her complaint was not being taken seriously, Plaintiff informed Defendant Collazo that she intended to report the incident to HR.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 29 of the Complaint.

**D.      After Informing Management That She Was Escalating Her Discrimination Complaint to HR, Plaintiff Immediately Received a Negative Audit and Was Falsely Accused of Providing Incongruent Documentation**

**COMPLAINT ¶30:**

Just three days after Plaintiff announced her intention to complain to HR, she received a critical audit from Defendant Cosminski, stating that her verbiage, grammar, spelling, and other communication methods were all very poor.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 30 of the Complaint, except admit

that Cosminski submitted audits of Plaintiff's member calls from May 5, 2023 and May 15, 2023,

which included both positive and constructive feedback for Plaintiff.

**COMPLAINT ¶31:**

The audit also stated that Plaintiff had interrupted the caller and had not shown enough empathy. Plaintiff again felt berated, belittled, and racially targeted.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint concerning Plaintiff's purported concerns or emotional state, and therefore deny the same.  Defendants deny the allegations contained in Paragraph 31 of the Complaint, except admit that Plaintiff did receive feedback in an audit reviewing a May 15, 2023 member call, which stated she should be mindful of interrupting members and should allow members to fully express themselves before interjecting. Defendants specifically deny that Plaintiff was subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint.

**COMPLAINT ¶32:**

Plaintiff was then invited to a Teams meeting with Defendant Collazo, at which Defendant Collazo stated that the same audit had been "red-flagged" for "incongruent documentation."

**ANSWER:**

Defendants deny the allegations contained in Paragraph 32 of the Complaint, except admit that an audit reviewing a May 15, 2023 member call, included a red flag, indicating there was something egregious on the call.  Defendants further admit that Plaintiff incorrectly completed documentation based on the content of the member call and failed to ask the member required, integral health related questions.  Defendants further admit that after Cosminski flagged the member call for incongruent documentation, it was forwarded to Plaintiff's manager, Collazo, for review.

13

**COMPLAINT ¶33:**

On the call that was the subject of the audit, Plaintiff had asked the member about her blood pressure, and the member replied that it was normal. Defendant Collazo claimed that, despite the caller not providing a precise blood pressure reading, Plaintiff had entered the numerical rating "185/105" into the system. That, however, was not the case. Plaintiff had in fact only checked the box for "normal" blood pressure; she had not entered a numerical reading.

**ANSWER:**

Defendants deny the allegations in Paragraph 33 of the Complaint, except aver that Plaintiff conducted the call with the member and completed several questions, including information about the member's blood pressure, without the member on the phone. Further, there were several instances during the call, where Plaintiff deviated from Company policy, which resulted in incongruencies based on the information provided by the member and the information documented by Plaintiff. In other words, what was documented in the case documentation was not stated on the call. Therefore, per Company policy, the auditor, Cosminski, submitted a red flag, for an accuracy error. Defendants further admit that after Cosminski flagged the member call for incongruent documentation, it was forwarded to Plaintiff's manager, Collazo, for review.

**COMPLAINT ¶34:**

When no numerical reading is entered for blood pressure, the system automatically populates with the last recorded reading for the member, which in this case had been 185/105. Although Plaintiff explained all this to Defendant Collazo, her explanation fell on deaf ears.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 34 of the Complaint, except aver that during the call with the member, Plaintiff continued to answer health profile questions after the call concluded, including, "What was your last blood pressure reading?" Further, Plaintiff admitted to Defendants that she filled out the information without asking the member.

14

317706179v.5

**COMPLAINT ¶35:**

Defendant Collazo also criticized Plaintiff for not asking certain questions on the call, but Plaintiff had already obtained the necessary information on those points and did not need to ask the questions outright. In fact, asking these redundant questions may have led the member to believe she was not being heard by Plaintiff.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint concerning the member's beliefs, and therefore deny the same. Defendants deny the allegations contained in Paragraph 35 of the Complaint, except admit that Collazo provided feedback that per Company policy, Plaintiff should have asked certain health related questions directly to the member during the May 15, 2023 call, rather than fill out specific questions on the member assessment without asking the member or without having documentation to support the question on the assessment.

**COMPLAINT ¶36:**

On a call later that day with Plaintiff, Defendant Collazo, and BSN Supervisor Ashley Layton ("Ms. Layton"), Defendant Collazo stated that she was reporting the supposed "incongruent documentation" to the Compliance department.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 36 of the Complaint, except aver that Collazo, per Company policy, reported the incongruencies in the May 15, 2023 call to the Compliance Department.

**COMPLAINT ¶37:**

Defendant Collazo told Plaintiff to expect to hear from Compliance soon and to be prepared for a possible verbal warning, written warning, or even termination. Yet, in contrast to Defendant Collazo's dire warnings and threats, Ms. Layton remained unperturbed, saying she was "sure this is nothing."

317706179v.5

**ANSWER:**

Defendants deny the allegations contained in Paragraph 37 of the Complaint, except admit that Collazo, per Company policy, reported the incongruencies in the May 15, 2023 call to the Compliance Department.  Defendants admit it was common practice for Collazo to inform individuals she managed of potential outcomes, where the employee was being investigated for violating Company policy.

**COMPLAINT ¶38:**

On May 30, 2023, Plaintiff was informed that she would be meeting with Compliance and HR on June 6, 2023, regarding the documentation issue, and with HR on June 8, 2023, regarding her complaint about Defendant Cosminski's racist remarks.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 38 of the Complaint, except admit that Plaintiff was informed that she would be meeting with both the Compliance Department, regarding the incongruency and falsification of document issue, and the Human Resource Department, regarding Plaintiff's complaint about Cosminski's audit feedback.  Defendants specifically deny that Plaintiff was subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint.

**E.**    **Although a Compliance Representative Told Plaintiff She Had Found No Compliance Violations, Plaintiff Was Nevertheless Terminated**

**COMPLAINT ¶39:**

On June 6, 2023, at the scheduled meeting with Compliance, Jamillo Viridiana, Ethics Department Investigator ("Ms. Viridiana"), and HR Associate Ashlynn Dunn ("Ms. Dunn"), Ms. Viridiana said she had reviewed the call and corresponding documentation and had not found any compliance violations. She asked Plaintiff to explain what happened from her perspective. Plaintiff offered the same explanation that she had given Defendant Collazo. Ms. Viridiana then asked Plaintiff about her supposed failure to ask the caller certain questions, prompting Plaintiff to explain again that she had been able to infer the answers to those questions from the information the caller had already provided in response to other questions.

16

317706179v.5

**ANSWER:**

Defendants deny the allegations contained in Paragraph 39 of the Complaint, except admit that Jamillo Viridiana ("Viridiana") and Ashlynn Dunn ("Dunn") met with Plaintiff to discuss the May 15, 2023 call with the member and the incongruencies in documentation. Defendants further admit that during the meeting with Plaintiff, Plaintiff admitted that she did not need to ask specific questions to the member, which Collazo confirmed was false. Viridiana and Dunn further concluded that in the areas that Plaintiff was required to ask certain questions of the member, she did not, however, the documentation was complete in these same areas. During this meeting, Plaintiff continued to state that because she was a nurse, she new how to ask the questions and could read between the lines. Dunn advised that the majority of the questions were responded to after the call disconnected, to which Plaintiff responded that she "knew the member well enough to answer on her behalf" and that she had a history with the member. Moreover, Dunn reviewed the documentation and found that Jacobs made further edits to the May 15, 2023 call documentation after May 16, 2023 and again on June 2, 2023, retracting her initial notes. Dunn's findings were reviewed by Company leadership, to which they supported termination, given the evidence substantiated falsification.

**COMPLAINT ¶40:**

Ms. Viridiana determined that the matter was "more of a practice issue than a compliance issue" and reiterated that she could find no compliance violations. Ms. Dunn observed that Plaintiff' manager, Defendant Collazo, was "strict" about documentation and about asking each and every question. Ms. Dunn also questioned why Plaintiff had entered some of her notes after the call had ended, prompting Plaintiff to explain that completing documentation after a call was standard procedure, referred to within the Company as "after-call work."

**ANSWER:**

Defendants deny the allegations contained in Paragraph 40 of the Complaint, except admit that Dunn did question why Plaintiff entered her notes after the call ended and advised that the

17

317706179v.5

majority of the questions were responded to after the call disconnected, to which Plaintiff responded that she "knew the member well enough to answer on her behalf" and that she had a history with the member. Moreover, Dunn reviewed the documentation and found that Jacobs made further edits to the May 15, 2023 call member assessment after May 16, 2023 and again on June 2, 2023, retracting her initial notes. Defendants further admit that the member assessment should be completed while the member is on the phone with the Company employee.

**COMPLAINT ¶41:**

While Elevance had no trouble honoring its commitment to hold the Compliance meeting on June 6, the Company inexplicably cancelled the scheduled HR meeting regarding Plaintiff's discrimination complaint on June 8, supposedly because – conveniently for the Company – Plaintiff was locked out of her computer system the morning of the meeting. Indeed, the HR representative who cancelled the meeting openly demonstrated her lack of preparation to meet as scheduled on June 8, when she stated that she still needed to learn the content of the micro-aggressive comments and asked Plaintiff to send them to her. In other words, the HR representative had done zero preparation to meet with Plaintiff on June 8 regarding her discrimination complaint. Clearly, no investigation whatsoever was underway.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 41 of the Complaint, except admit that in response to Plaintiff's complaint, submitted on or about May 30, 2023, and the Human Resource Associate Relations Team opened an investigation. Defendants further admit that Plaintiff met with a member of the Associate Relations Team on or about June 8, 2023 and June 13, 2023.

**COMPLAINT ¶42:**

It is unclear whether HR ever intended to meet with Plaintiff about her discrimination complaint at all. In reality, the meeting never took place. Tellingly, however, less than a week later, on June 12, in a Microsoft Teams meeting attended by Plaintiff, Defendant Collazo, and Heidi Campos, Manager II ("Ms. Campos"), Defendant Collazo abruptly and unceremoniously terminated Plaintiff's employment, stating, without further explanation, that she had been directed to do so by HR and the Legal department.

18

317706179v.5

**ANSWER:**

Defendants deny the allegations contained in Paragraph 42 of the Complaint, except admit that Plaintiff was terminated on or about June 13, 2023 as a direct result of the findings that she falsified member documentation based on the May 15, 2023 call. In addition, Plaintiff was told that her termination was due to her falsification of member documentation. Defendants further admit that in response to Plaintiff's complaint, submitted on or about May 30, 2023, and the Human Resource Associate Relations Team opened an investigation. Defendants further admit that Plaintiff met with a member of the Associate Relations Team on or about June 8, 2023 and June 13, 2023.

**COMPLAINT ¶43:**

Despite her determination to remain optimistic about, and committed to, her career at Elevance, the ruthless discrimination and retaliation she has continued to suffer at the Company has rendered Plaintiff distraught and crestfallen. Indeed, Plaintiff's emotional distress is clear and cognizable given the reality that Elevance allowed Defendant Collazo to press her unlawful campaign against Plaintiff without repercussion, while ignoring its obligations to seriously investigate Plaintiff's complaints of discrimination and retaliation.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the Complaint concerning Plaintiff's purported concerns or emotional state, and therefore deny the same. Defendants specifically deny that Plaintiff was subject to any discrimination, retaliation, or unlawful conduct alleged in the Complaint. Defendants deny the remaining allegations contained in Paragraph 43 of the Complaint.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
*Against Defendant Elevance Health*

**COMPLAINT ¶44:**

Plaintiff repeats and realleges each and every allegation in the above paragraphs of this complaint as if fully set forth herein.

19

317706179v.5

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding paragraphs as if fully set forth herein.

**COMPLAINT ¶45:**

By the actions detailed above, among others, Elevance discriminated against Plaintiff in violation of Title VII by, *inter alia*, denying her the equal terms and conditions of employment because of race and color (Black), allowing Plaintiff to be subjected to discrimination.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 45 of the Complaint.

**COMPLAINT ¶46:**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 46 of the Complaint.

**COMPLAINT ¶47:**

Accordingly, as a result of the unlawful conduct of Elevance set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

**ANSWER:**

Paragraph 47 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 47 of the Complaint.

317706179v.5

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
### *Against Defendant Elevance Health*

**COMPLAINT ¶48:**

Plaintiff repeats and realleges each and every allegation in the above paragraphs of this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding

paragraphs as if fully set forth herein.

**COMPLAINT ¶49:**

By the actions detailed above, among others, Elevance has retaliated against Plaintiff based on her protected activities in violation of Title VII, including giving her a negative audit and terminating Plaintiff's employment.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 49 of the Complaint.

**COMPLAINT ¶50:**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 50 of the Complaint.

**COMPLAINT ¶51:**

Accordingly, as a result of the unlawful conduct of Elevance set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

317706179v.5

**ANSWER:**

Paragraph 51 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants deny the allegations contained in Paragraph 51 of

the Complaint.

**THIRD CAUSE OF ACTION**
**DISCRIMINATION UNDER SECTION 1981**
*Against all Defendants*

**COMPLAINT ¶52:**

Plaintiff repeats and realleges each and every allegation made in the above paragraphs in this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding

paragraphs as if fully set forth herein.

**COMPLAINT ¶53:**

Pursuant to 42 USC §1981: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and should all be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

**ANSWER:**

Paragraph 53 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants respectfully refers the Court to the statute cited

herein for its true content and meaning.

**COMPLAINT ¶54:**

Defendants engaged in unlawful employment practices prohibited by 42 USC §1981 against Plaintiff by denying her the equal terms and conditions of employment, discriminating against her because of her race and color (Black).

**ANSWER:**

Defendants deny the allegations contained in Paragraph 54 of the Complaint.

22

317706179v.5

**COMPLAINT ¶55:**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 55 of the Complaint.

**COMPLAINT ¶56:**

Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

**ANSWER:**

Paragraph 56 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants deny the allegations contained in Paragraph 56 of

the Complaint.

**FOURTH CAUSE OF ACTION**
**RETALIATION UNDER SECTION 1981**
*Against all Defendants*

**COMPLAINT ¶57:**

Plaintiff repeats and realleges each and every allegation made in the above paragraphs in this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding

paragraphs as if fully set forth herein.

**COMPLAINT ¶58:**

As described above, Defendants retaliated and/or discriminated against Plaintiff for engaging in protected activities pursuant to 42 USC § 1981, including by giving her a negative audit and terminating Plaintiff's employment.

23

317706179v.5

**ANSWER:**

Defendants deny the allegations contained in Paragraph 58 of the Complaint.

**COMPLAINT ¶59:**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 59 of the Complaint.

**COMPLAINT ¶60:**

Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

**ANSWER:**

Paragraph 60 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants deny the allegations contained in Paragraph 60 of

the Complaint.

**FIFTH CAUSE OF ACTION**
**DISCRIMINATION UNDER NYSHRL**
*Against all Defendants*

**COMPLAINT ¶61:**

Plaintiff repeats and realleges each and every allegation made in the above paragraphs in this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding

paragraphs as if fully set forth herein.

24

317706179v.5

**COMPLAINT ¶62:**

New York Executive Law § 296 provides that:

1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

**ANSWER:**

Paragraph 62 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants respectfully refers the Court to the statute cited

herein for its true content and meaning.

**COMPLAINT ¶63:**

By the actions detailed above, among others, Defendants have discriminated against Plaintiff in violation of the NYSHRL by, *inter alia*, denying her the equal terms and conditions of employment, discriminating against her because of her race and color (black).

**ANSWER:**

Defendants deny the allegations contained in Paragraph 63 of the Complaint.

**COMPLAINT ¶64:**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 64 of the Complaint.

**COMPLAINT ¶65:**

Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

317706179v.5

**ANSWER:**

Paragraph 65 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 65 of the Complaint.

## SIXTH CAUSE OF ACTION
## RETALIATION UNDER NYSHRL
### *Against all Defendants*

**COMPLAINT ¶66:**

Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding paragraphs as if fully set forth herein.

**COMPLAINT ¶67:**

New York Executive Law § 296 provides that:

7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

**ANSWER:**

Paragraph 67 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendants respectfully refers the Court to the statute cited herein for its true content and meaning.

**COMPLAINT ¶68:**

By the actions detailed above, among others, Defendants have retaliated against Plaintiff based on her protected activities in violation of the NYSHRL, including by giving her a negative audit and terminating Plaintiff's employment.

317706179v.5

**ANSWER:**

Defendants deny the allegations contained in Paragraph 68 of the Complaint.

**COMPLAINT ¶69:**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 69 of the Complaint.

**COMPLAINT ¶70:**

Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

**ANSWER:**

Paragraph 70 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants deny the allegations contained in Paragraph 70 of

the Complaint.

**SEVENTH CAUSE OF ACTION**
**AIDING AND ABETTING UNDER NYSHRL**
*Against Individual Defendants Only*

**COMPLAINT ¶71:**

Plaintiff hereby repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding

paragraphs as if fully set forth herein.

27

317706179v.5

**COMPLAINT ¶72:**

New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

**ANSWER:**

Paragraph 72 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants respectfully refer the Court to the statute cited

herein for its true contents and meaning.

**COMPLAINT ¶73:**

Individual Defendants engaged in an unlawful employment practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct against Plaintiff.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 73 of the Complaint.

**COMPLAINT ¶74:**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 74 of the Complaint.

**COMPLAINT ¶75:**

Accordingly, as a result of the unlawful conduct of Individual Defendants, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

317706179v.5

**ANSWER:**

Paragraph 75 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants deny the allegations contained in Paragraph 75 of

the Complaint.

**EIGHTH CAUSE OF ACTION**
**DISCRIMINATION UNDER NYCHRL**
*Against all Defendants*

**COMPLAINT ¶76:**

Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding

paragraphs as if fully set forth herein.

**COMPLAINT ¶77:**

New York City Administrative Code §8-107(1) provides that it shall be unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment."

**ANSWER:**

Paragraph 77 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants respectfully refer the Court to the statute cited

herein for its true contents and meaning.

**COMPLAINT ¶78:**

By the actions detailed above, among others, Defendants have discriminated against Plaintiff in violation of the NYCHRL by, *inter alia*, denying her the equal terms and conditions of employment, discriminating against her because of her race and color (black).

29

317706179v.5

**ANSWER:**

Defendants deny the allegations contained in Paragraph 78 of the Complaint.

**COMPLAINT ¶98:**[sic]

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that his employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 98 [sic] of the Complaint.

**COMPLAINT ¶99:**[sic]

Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

**ANSWER:**

Paragraph 99 [sic] of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 99 [sic] of the Complaint.

**NINTH CAUSE OF ACTION**
**RETALIATION UNDER NYCHRL**
*Against all Defendants*

**COMPLAINT ¶79:**

Plaintiff hereby repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding paragraphs as if fully set forth herein.

317706179v.5

**COMPLAINT ¶80:**

New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, (v) requested a reasonable accommodation under this chapter, or ([v]vi) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.

**ANSWER:**

Paragraph 80 of the Complaint contains legal conclusions to which no response is required.

To the extent a response is required, Defendants respectfully refer the Court to the statute cited

herein for its true contents and meaning.

**COMPLAINT ¶81:**

By the actions detailed above, among others, Defendants have retaliated against Plaintiff based on her protected activities in violation of the NYCHRL, including by giving her a negative audit and terminating Plaintiff's employment.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 81 of the Complaint.

**COMPLAINT ¶91:**[sic]

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 91 [sic] of the Complaint.

317706179v.5

**COMPLAINT ¶92:**[sic]

Accordingly, as a result of the unlawful conduct of Defendants set forth herein, Plaintiff has been damaged and is entitled to the maximum compensation available to her under this law, including, but not limited to, punitive damages.

**ANSWER:**

Paragraph 92 [sic] of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 92 [sic] of the Complaint.

### TENTH CAUSE OF ACTION
### AIDING AND ABETTING UNDER NYCHRL
### *Against Individual Defendants*

**COMPLAINT ¶91:**[sic]

Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

**ANSWER:**

Defendants repeat and incorporate their responses to the allegations in the preceding paragraphs as if fully set forth herein.

**COMPLAINT ¶92:**

New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any acts of the acts forbidden under this chapter, or attempt to do so."

**ANSWER:**

Paragraph 92 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the statute cited herein for its true contents and meaning.

**COMPLAINT ¶93:**

Individual Defendants engaged in an unlawful employment practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling, or coercing the discriminatory conduct against Plaintiff.

32

317706179v.5

**ANSWER:**

Defendants deny the allegations contained in Paragraph 93 of the Complaint.

**COMPLAINT ¶94:**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission, and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 94 of the Complaint.

**COMPLAINT ¶95:**

Accordingly, as a result of the unlawful conduct of Individual Defendants, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

**ANSWER:**

Paragraph 95 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 95 of the Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981); the New York State Human Rights Law, New York State Executive Law, §§ 296 et seq. ("NYSHRL"); the New York City

33

Human Rights Law, Administrative Code §§ 8-107, et seq. ("NYCHRL") in that Defendants discriminated and retaliated against Plaintiff on the on the basis of her race and color (black);

B.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to her reputation in an amount to be proven at trial;

D.    Awarding Plaintiff punitive damages;

E.    Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action; and

F.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

**ANSWER:**

Defendants deny that Plaintiff is entitled to any of the relief sought in the WHEREFORE clause, or to any other relief sought by this Complaint.  Further, Defendants deny that they have committed any wrongdoing or otherwise has violated any law or statute referenced in the Complaint.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

**ANSWER:**

Defendants object to a trial by jury as to Plaintiff's equitable claims and all other issues to which a jury is not permitted as a right as a matter of law.

34

317706179v.5

## AFFIRMATIVE AND OTHER DEFENSES

Defendants deny any allegations in the Complaint not specifically admitted herein. Defendants assert the following affirmative and other defenses without assuming any burden of proof that it would not otherwise have:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Subject to proof through discovery, Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands or after-acquired evidence.

### THIRD DEFENSE

Defendants did not discriminate against Plaintiff on the basis of her race or any other protected category.

### FOURTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the applicable statutes of limitations.

### FIFTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the doctrine of waiver or laches.

### SIXTH DEFENSE

Subject to proof through discovery, Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### SEVENTH DEFENSE

Defendants neither engaged in the alleged discrimination or retaliation against Plaintiff, nor aided or abetted it, nor authorized, encouraged, condoned, ratified, acquiesced, tolerated, or approved of any of the alleged discrimination or retaliation against Plaintiff, and instead prohibited

35

317706179v.5

and prohibits any such acts, and any such acts may not be attributed to Defendants through principles of agency, *respondeat superior*, or otherwise.

## EIGHTH DEFENSE

Plaintiff's claims are not actionable because the employment practices or decisions challenged in the Complaint are justified by legitimate, non-discriminatory or non-retaliatory reasons.

## NINTH DEFENSE

Defendants have well-established policies against discrimination and retaliation and reasonable and available procedures for handling complaints thereof, which provide for prompt and effective responsive action. To the extent Plaintiff failed to utilize or otherwise avail herself of these policies and procedures, her claims are barred.

## TENTH DEFENSE

Defendants at all times, and in all manners, acted in accordance with any and all duties and obligations that it may have had under the laws, regulations, or public policy of the United States of America, State of New York, and City of New York.

## ELEVENTH DEFENSE

Plaintiff's claims for relief are barred, in whole or in part, because they are speculative in nature, and Plaintiff has not alleged facts sufficient to support a damages award.

## TWELFTH DEFENSE

Plaintiff is not entitled to liquidated damages or punitive damages in that she can neither demonstrate malice, actual participation, or reckless indifference by Defendants, nor can she impute liability for punitive damages to Defendants because of its good faith effort to comply with applicable laws.

317706179v.5

## THIRTEENTH DEFENSE

Plaintiff is barred from recovery of some, or all, of the damages sought because they are not authorized by the Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("§ 1981"), New York State Human Rights Law ("NYSHRL"), or the New York City Human Rights Law ("NYCHRL").

## FOURTEENTH DEFENSE

Without conceding that Plaintiff suffered any damages because of any purportedly wrong act by Defendants alleged in the Complaint, Plaintiff has failed, in whole or in part, to mitigate, or to reasonably attempt to mitigate, her purported damages.

## FIFTEENTH DEFENSE

Any damages Plaintiff may seek to recover, proof of which is required, were the result of Plaintiff's own actions or inactions.

## SIXTEENTH DEFENSE

The causes of action alleged or alluded to in the Complaint are frivolous, unreasonable, and groundless, and accordingly, Defendants should recover all costs and attorneys' fees incurred in defending this action.

## SEVENTEENTH DEFENSE

Before and throughout the relevant time period, Defendants have established policies, programs and procedures for the prevention and detection of unlawful discriminatory conduct and practices, including, but not limited to, a procedure for investigating complaints of discriminatory practices by employees and agents, and for taking appropriate action against those found to have engaged in such practices, a form policy against discrimination that is communicated to employees and agents, a program to educate employees and agents about unlawful discriminatory practices

37

317706179v.5

under state, local, and federal law, and procedures for the supervision of employees and agents directed at the prevention and detection of such practices.

## EIGHTEENTH DEFENSE

To the extent permitted by law, Defendants seek recovery of reasonable and necessary attorneys' fees and costs.

## NINETEENTH DEFENSE

Defendants have established, implemented, and compiled with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees in accordance with § 8-107(13)(d) of the New York City Administrative Code.

## TWENTIETH DEFENSE

All relevant factors should be considered in accordance with § 8-107(13)(e) and (f) of the New York City Administrative Code.

## TWENTY-FIRST DEFENSE

Mitigating factors should be considered in accordance with § 8-126(b) of the New York City Administrative Code.

## TWENTY-SECOND DEFENSE

Defendants cannot be held liable for any alleged discriminatory or retaliatory conduct purportedly experienced by Plaintiff (and Defendants deny such conduct occurred), because the conduct of which Plaintiff complains consists of nothing more than what a reasonable person would consider to be petty slights or trivial inconveniences.

## TWENTY-THIRD DEFENSE

Plaintiff's claims are barred to the extent she has failed to satisfy the procedural conditions precedent to asserting such claims pursuant to NYC Admin. Code § 8-502, including without

317706179v.5

limitation, the requirement that a copy of her Complaint be served upon the New York City Commission on Human Rights or the New York City Corporation Counsel.

## **RESERVATION OF RIGHTS**

Defendants reserve their right to amend this Answer and to assert any additional affirmative and/or other defenses that may become available or apparent during the investigation and/or discovery in this case.

**WHEREFORE**, Defendants respectfully request that this Court enter judgment in its favor against Plaintiff as follows:

1. dismissing the Complaint in its entirety on the merits;

2. granting to Defendants the costs and expenses of this action, including attorneys' fees; and

3. awarding Defendants such other and further relief as the Court may deem just and proper.

317706179v.5

40

Dated:　New York, New York
　　　　May 27, 2025

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Howard M. Wexler*

　　Howard M. Wexler
　　hwexler@seyfarth.com
　　Emily A. Barsamian
　　ebarsamian@seyfarth.com
　　620 Eighth Avenue
　　New York, New York  10018
　　Telephone:  (212) 218-5500
　　Facsimile:  (212) 218-5526

Attorneys for Defendants
ELEVANCE HEALTH, INC.; STEPHANIE
COLLAZO; AND SHANNON COSMINSKI

40

317706179v.5

## CERTIFICATE OF SERVICE

I, Howard M. Wexler, hereby certify that on May 27, 2025, I electronically filed the foregoing **DEFENDANTS' ANSWER AND AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFF'S COMPLAINT**, with the Clerk of the Court via the Court's CM/ECF system, and effected service via FedEx, and a courtesy copy by email, to the following counsel of record for Plaintiff:

FILIPPATOS PLLC
Parisis G. Filippatos
pgf@filippatoslaw.com
(914) 984-1111
Alfredo J. Pelicci
alpelicci@filippatoslaw.com
(212) 202-0234
425 Madison Avenue, Suite 1502
New York, New York 10017

*Attorneys for Plaintiff*

 /s/ Howard M. Wexler
Howard M. Wexler

41

317706179v.5